UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GRACIELA J. BARRAGAN, | No. CV 05-5723-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

**PROCEEDINGS**

Plaintiff filed this action on August 8, 2005, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 28, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 16, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 19, 1945. [Administrative Record ("AR") at 49.] She attended school through the sixth grade in Mexico. [AR at 65, 255-57.] Her relevant past work experience includes positions as a machine operator and a day care assistant. [AR at 58-60, 71-74, 257-59.]

On December 20, 2002, plaintiff filed an application for Disability Insurance Benefits, in which she alleged that she has been unable to work since January 30, 1999, due to constant pain, depression, sleepiness and anxiety. [AR at 49-51, 58-67.] After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 3, 2004, at which plaintiff appeared with counsel and testified. A medical expert and a vocational expert also testified. [AR at 252-82.] On August 26, 2004, the ALJ determined that plaintiff was not disabled because she retains the ability to perform medium work activity.[1] [AR at 16-26.] When the Appeals Council denied review on June 8, 2005, the ALJ's decision became final. [AR at 7-11.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

---

[1] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 17, 25.] At step two, the ALJ concluded that plaintiff has the following impairments which, in combination, are severe: disc degeneration of the thoracic spine with kyphosis and degenerative changes from T5 through T11, degenerative change and spurring of the acromioclavicular joint on the right and impingement syndrome of the right shoulder, mild degenerative change of the mid- to lower-cervical spine, diabetes mellitus, and a depressive disorder. [Id.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 19, 25.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform medium work.[3] [Id.] At step four, the ALJ determined that plaintiff is capable of performing her past relevant work. [AR at 25-26.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [Id.]

---

[2]  Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[3]  According to the ALJ, out of an eight hour workday plaintiff can stand and/or walk for six hours and sit for six hours. She can frequently, but not constantly, elevate her right shoulder, and can occasionally reach overhead with her right upper extremity. The ALJ found no "significant" mental limitations. [AR at 23.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends the following: (1) the Appeals Council failed to consider the opinion of the treating physician; (2) the ALJ's determination that plaintiff's mental impairment was not severe is not supported by substantial evidence; (3) the ALJ erred in not considering the combined effect of plaintiff's impairments; and (4) the ALJ's credibility determination was improper. Joint Stipulation ("Joint Stip.") at 8. For the reasons stated below, the Court respectfully disagrees with plaintiff's contentions, and affirms the ALJ's decision.

### A.   PLAINTIFF'S NEW EVIDENCE WAS PROPERLY CONSIDERED.

After plaintiff's application was denied by the ALJ on August 26, 2004, she submitted to the Appeals Council a "Medical Source Statement" ("Statement") that was prepared by treating physician Dr. Robert Rivera on September 1, 2004. [AR at 248-51.] In the Statement, Dr. Rivera indicates that plaintiff suffers from "probable" fibromyalgia and myofascial pain syndrome. He sets forth numerous work restrictions, such as: plaintiff can sit for four hours and stand and/or walk for less than two hours; she needs to take unscheduled breaks at least eight times per day and lasting up to thirty minutes at a time; she needs to be able to shift positions from sitting to standing and back to sitting approximately eight times per day; she is incapable of tolerating even "low stress" jobs; and she has the ability to lift up to ten pounds occasionally . [AR at 248-50.] As indicators of plaintiff's impairment, Dr. Rivera identified certain clinical findings consisting of x-rays of plaintiff's shoulder, hip, and spine. [AR at 248.]

Plaintiff contends in the Joint Stipulation that the Appeals Council improperly "rejected the opinion of [Dr. Rivera] without any explanation for the rejection." Joint Stip. at 9. Contrary to plaintiff's argument, however, the record shows that the Appeals Council did not disregard the new evidence, but in fact accepted Dr. Rivera's assessment and made it part of the record.[4] [AR at

---

[4] According to 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." If the Appeals Council

11.] In denying plaintiff's request for review, the Appeals Council expressly stated that it "has considered Dr. Rivera's medical source statement but accord this assessment little weight. The assessed limitations are not supported by the record and Dr. Rivera has not submitted clinical documentation in support[] of his assessed limitations." [AR at 8.]

The Appeals Council may discredit the opinion of a controverted treating physician by giving specific and legitimate reasons based on substantial evidence in the record. See Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993). The Court has considered the record, and finds that the Appeals Council's reasons for rejecting Dr. Rivera's assessment meet this standard.

The Appeals Council's conclusion that the work restrictions set forth by Dr. Rivera are not supported by the record was not improper. Dr. Rivera indicated that the limitations he assessed were warranted on account of x-ray results from 2002.[5] [AR at 179-83, 248.] Dr. Rivera's assessment does not explain in any detail how the x-rays justify his conclusion that plaintiff's physical capabilities are so severely restricted. The Court notes that the consultative physician, Dr. Mehran Sourehnissani, reviewed the same results and, after administering a battery of his own independent tests, opined that plaintiff can do medium work. [AR at 190-95.] The testifying medical expert also reviewed the x-rays, and remarked that they only showed "really mild degenerative changes" before similarly concluding that plaintiff can perform medium work. [AR at 266-67, 269.] The Appeals Council properly concluded, based on substantial evidence in the

---

determines that the new evidence relates back to the period on or before the date of the hearing, it must then review all of the evidence submitted by the claimant to determine if the ALJ's decision "is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). The Appeals Council will also review the ALJ's decision "if (1) there appears to be an abuse of discretion by the ALJ; (2) there is an error of law; (3) the action, findings, or conclusions of the ALJ are not supported by substantial evidence; or (4) there is a broad policy or procedural issue that may affect the general public interest." Durham v. Apfel, 1999 WL 778243, *11 (D. Or. Sept. 22, 1999) (citing 20 C.F.R. § 404.970(a)). Here, the Court presumes by the acceptance of the new evidence that the Appeals Council concluded that Dr. Rivera's statement relates to the relevant time frame. Accordingly, this Court will consider it as part of the entire record.

[5] According to the x-rays, plaintiff has, with respect to her thoracic spine, mild anterior wedge compression of T6 through T8 and mild kyphosis. In her right shoulder, she has mild degenerative changes and spurring of the acromioclavicular joint associated with impingement syndrome. She also has mild degenerative changes in her mid- to lower-cervical spine. [AR at 179-82.]

record, that the apparently mild nature of plaintiff's shoulder and spine conditions as reflected in the x-rays does not support Dr. Rivera's restrictive work limitations.

In rejecting Dr. Rivera's opinion, the Appeals Council also appropriately relied on the fact that Dr. Rivera did not submit any supporting clinical documentation. As mentioned above, the clinical evidence Dr. Rivera did primarily rely on -- the x-ray results which reflect generally mild changes -- do not support his conclusions. Moreover, Dr. Rivera's remark that plaintiff has "probable" fibromyalgia and "probable" myofascial pain syndrome fails to indicate a firm diagnosis of either condition. [AR at 248.] In fact, as reflected in the treating notes, Dr. Rivera contrarily noted on March 11, 2003, that plaintiff probably did *not* have fibromyalgia "considering [the] unilateral nature" of her complaints. [AR at 224.] There is no indication that further testing was conducted to arrive at his September 2004 conclusion that she did in fact probably have fibromyalgia. Dr. Rivera cites to no medical evidence supporting these apparently tenuous diagnoses. [AR at 248.]

Although not expressly mentioned by the Appeals Council, the Court also observes that the assessment at issue, consisting of a four-page check-off report, was too conclusory to be highly probative. Because Dr. Rivera did not elaborate on, or otherwise explain, how plaintiff's physical impairments resulted in the functional limitations set forth on the forms, the Appeals Council could have rejected his opinion on that basis alone. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cr. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctors' opinions because they were contained in check-off reports that did not contain any explanation of the bases of the conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

1    For the foregoing reasons, the Court finds that the Appeals Council's rejection of Dr.
2  Rivera's opinion is based on specific and legitimate reasons that are supported by the record. The
3  Court concludes that reversal or remand on this issue is not warranted.

**B.    THE ALJ PROPERLY CONCLUDED THAT PLAINTIFF'S MENTAL IMPAIRMENT IS NOT SEVERE.**

Plaintiff also takes issue with the ALJ's determination concerning her mental impairment. In plaintiff's view, the ALJ's decision is ambiguous because, at one point in the opinion, the ALJ states that plaintiff's depression in combination with the other impairments is severe, but nevertheless goes on to later state that "[h]er mental impairment is not severe." Joint Stip. at 14. [See AR at 19, 26.] Plaintiff maintains that her depression, which was diagnosed by three physicians, is severe, and that the ALJ failed to give this impairment proper consideration. Joint Stip. at 13-14.

A "severe" impairment or combination of impairments is defined as one that significantly limits a plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process permits the Commissioner to screen out claimants whose impairments are so slight that they are unlikely to be found disabled even if age, education, and experience are considered. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). Overly stringent application of the "severity" requirement, however, would violate the statute by denying benefits to claimants who meet the definition of "disabled." Corrao, 20 F.3d at 949, citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring).

An impairment should be found to be "non-severe" when the evidence establishes merely a slight abnormality, with no more than a minimal effect on ability to work. Corrao, 20 F.3d at 949, citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28 (1985)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination

of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the Court finds no ambiguity in the ALJ's decision. The ALJ determined that plaintiff's impairments are severe when considered *in combination*, and expressly noted that "not each of these impairments is severe if considered separately." [AR at 19.] The ALJ was therefore not inconsistent for concluding that plaintiff's depression by itself did not rise to the level of a "severe" impairment.

The Court further finds that the ALJ's severity determination with respect to plaintiff's depression is supported by the record. The ALJ reviewed the relevant evidence, such as plaintiff's April 1997 psychological evaluation by Dr. Allan Gerson.[6] [AR at 22, 149-54.] Dr. Gerson diagnosed plaintiff with dysthymic disorder[7] and gave her a current Global Assessment of Functioning ("GAF") score of 65 to 70, as well as for the prior year.[8] In May 1998, Dr. Gerson confirmed the diagnosis of dysthymic disorder and recommended that plaintiff receive psychotherapy along with psychotropic medications. [AR at 146-47.] He indicated that plaintiff had slight to minimal limitations with respect to work-related functions. By that time, plaintiff had returned to work. [AR at 145.]

The ALJ also reviewed the results of the March 2003 psychological evaluation prepared by consultative psychologist, Dr. Melanie Moran. [AR at 22, 184-88.] During that exam, plaintiff was oriented to time, place, person, and purpose; understood most questions; had clear speech

---

[6] This evaluation was conducted in connection with plaintiff's workers' compensation case.

[7] Dysthymia is "a chronic form of depression, characterized by moods that are consistently low, but not as extreme as other types of depression." See Medline Plus, Medical Encyclopedia at http://nlm.nih.gov/medlineplus/ency/article/000918.htm.

[8] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score in the range of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. at 34.

and organized, productive thoughts; and was able to follow one- and two-part directions and some details. [AR at 186.] Plaintiff's affect was dysphoric, but her memory, concentration and attention span were intact. [AR at 186-87.] Dr. Moran diagnosed plaintiff with depression (not otherwise specified) and indicated that she is functioning in the borderline intellectual range. [AR at 187.] With respect to plaintiff's ability to work, Dr. Moran found that plaintiff did not evidence cognitive or emotional limitations, and concluded that plaintiff is able to do the following: learn a simple repetitive task; follow one- and two-part directions with some details; adapt to minimal changes in a work environment; and maintain a regular schedule. [AR at 187.] Dr. Moran also noted that plaintiff's reasoning capacities are intact, and that she demonstrated the ability to relate adequately to authority figures. [Id.]

The ALJ further took note that in May 2003, plaintiff saw Dr. Garnik Yegyan, a neurologist. [AR at 22, 235-36.] Dr. Yegyan diagnosed depression and prescribed several psychotropic medications. Based on the notes in the record, plaintiff continued to see Dr. Yegyan until December 2003 for her depression, and at times was noted to be "more stable." [AR at 239-45.]

The ALJ also relied on the April 2003 Psychiatric Review Technique Form ("PRTF") completed by a State Agency nonexamining physician. In the PRTF, the physician noted that plaintiff suffers from depression, but that it is not severe. [AR at 197-210.] With respect to the borderline intellectual functioning diagnosis by Dr. Moran, the physician found the diagnosis to be inconsistent with Dr. Gerson's test results. Specifically, Dr. Gerson opined that plaintiff would have only minimal limitations in performing complex or varied tasks, which according to the State Agency doctor suggests an Intelligence Quotient ("IQ") above the borderline level.[9] [AR at 22, 148, 209.] The medical expert similarly testified that the record does not support a finding that plaintiff has borderline intellect. [AR at 269.]

As set forth in the decision, the ALJ found that, consistent with the PRTF, plaintiff has only mild restrictions on activities of daily living, mild difficulties in maintaining social functioning, and

---

[9] In the Joint Stipulation, plaintiff raises no issue with the ALJ's determination that she is not functioning at a borderline intellectual level. Her argument is limited to the diagnosis of depression.

mild deficiencies of concentration, persistence or pace. [AR at 22.] In concluding that plaintiff is able to perform the demands of simple work, the ALJ determined that her mental impairment is not, by itself, severe. [AR at 22-23.]

The Court finds that the ALJ's determination is not improper, as the record supports the finding that plaintiff is capable of simple work. Thus, because the medical evidence shows that plaintiff's mental impairment does not *significantly* limit her mental ability to do basic work activities, remand for reconsideration of the severity of her depression is not warranted.[10] See 20 C.F.R. § 404.1521(a), (b)(3) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities" such as "[u]nderstanding, carrying out, and remembering simple instructions[.]").

C.     THE ALJ'S CREDIBILITY DETERMINATION WAS NOT IMPROPER.

Plaintiff contends that the ALJ failed to properly assess her credibility. Joint Stip. at 22-24. Specifically, plaintiff argues that the ALJ did not provide "specific and cogent reasons for his [credibility] findings." Id. at 22.

When the record contains medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain."). In that circumstance, an ALJ

---

[10]  In any event, the ALJ's conclusion that plaintiff can perform her past work as an assembly press operator and punch press operator is consistent with the finding that she can perform simple work, as both positions involve only simple, repetitive tasks. [AR at 25, 279-80.] Plaintiff has not established that, whether or not her depression is severe by itself, a more restrictive mental RFC was appropriate.

11

can reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The following factors may be considered in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In the hearing decision, the ALJ specifically noted plaintiff's subjective complaints, such as her difficulties with dressing, her inability to cook and shop, and her lack of social activities due to pain, as well as her allegations that she does not read or watch television, does not listen to the radio, has memory problems, can stand for only twenty minutes at a time, can sit for only thirty minutes, and that her medications cause side effects such as sleepiness, grogginess, and dizziness. The ALJ further observed that according to plaintiff's testimony, she spends her days lying down and does not perform household chores or run errands. The ALJ concluded, however, that plaintiff "is not wholly credible." [AR at 23.]

As an initial matter, the Court notes that the record contains evidence of plaintiff's underlying impairments, and that no clear indication of malingering is apparent. The ALJ was thus required to justify his credibility decision with clear and convincing reasons. Benton, 331 F.3d at 1040. As set forth below, the Court has considered the ALJ's reasons for the unfavorable determination, and find that they meet this standard.

First, the ALJ noted that certain material inconsistencies exist that diminish plaintiff's credibility. [AR at 23.] For example, with respect to activities, plaintiff reported to the consultative psychologist that she is able to do some of her own chores and cooking. [AR at 186.] In contrast,

in her Daily Activities Questionnaire completed two months earlier, she states that she does no household chores and that other family members cook her meals. [AR at 84.] Another example involves the alleged side effects of medications. In plaintiff's Daily Activities Questionnaire, she states that her medication makes her sleepy, dizzy, or groggy. [AR at 87.] In her Pain Questionnaire, however, plaintiff states that "some [of her medications] cause sleepiness but doesn't put [her] to sleep, groggy, or dizzy."[11] [AR at 79.] The ALJ also relied upon the fact that plaintiff's alleged memory problems are refuted by the objective findings of the consultative psychologist who concluded that plaintiff's memory is intact. See 20 C.F.R. §§ 404.1529, 416.929 (permitting the evaluation of, among other things, inconsistencies in the evidence, and conflicts between a claimant's statements and the rest of the evidence, to determine the extent to which symptoms affect capacity to work); see also Thomas, 278 F.3d at 958-59 (ALJ may consider, among other factors, inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct).

    In addition, the ALJ took note that plaintiff's treatment history is not consistent with the severity of her allegations, namely that while she alleges she has suffered from disabling symptoms since 1999, there is little evidence of treatment between 1997 and 2003. The Court finds this reason sufficiently convincing, as it is reasonable to assume that an individual experiencing the alleged symptoms would require more frequent treatment than what is reflected in the record. See Johnson, 60 F.3d at 1434 (conservative medical treatment could suggest lower level of pain and functional limitation). The ALJ also properly relied upon the fact that plaintiff discontinued physical therapy and, despite her claims of disability since 1999 due in part to mental impairments, she did not seek psychological treatment until May 2003. See Bunnell, 947 F.2d at 346 (relevant factors include the unexplained, or inadequately explained, failure to follow a prescribed course of treatment).

---

[11] The ALJ further pointed out that there is no evidence that plaintiff persistently complained of side effects to her doctors. [AR at 23.] The Court finds it reasonable for the ALJ to have surmised that, if plaintiff was in fact experiencing disabling side effects, such complaints would be reflected in the treating notes.

Based on the foregoing, the Court concludes that the ALJ's credibility determination is owed deference, as it supported by clear and convincing reasons.[12] Accordingly, a more restrictive RFC on account of plaintiff's subjective allegations is not warranted.

### D. THE ALJ PROPERLY CONSIDERED THE COMBINED EFFECT OF PLAINTIFF'S IMPAIRMENTS.

When determining a claimant's RFC, the ALJ must consider whether the aggregate of her mental and physical impairments prevents her from performing available work. 20 C.F.R. § 404.1523; Light, 119 F.3d at 793. In making that determination, the ALJ may elicit testimony from a vocational expert ("VE"), but "'the hypothetical [posed to the vocational expert] must consider all of the claimant's limitations.'" Light, 119 F.3d at 793 (quoting Andrews, 53 F.3d at 1044). "While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Id.

Here, plaintiff contends that the ALJ, in formulating the RFC, failed to consider certain symptoms and limitations, namely that she experiences pain, that she needs to change position

---

[12] While plaintiff does not raise the ALJ's treatment of her daughter's Third Party Questionnaire as a separate issue in the Joint Stipulation, plaintiff remarks that the ALJ addressed the daughter's allegations in "a general manner." Joint Stip. at 22. An ALJ may reject lay testimony only for specific reasons germane to each witness. See Regennitter v. Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). The Court finds that the ALJ's treatment of the daughter's questionnaire was not improper. As set forth in the decision, the ALJ considered the daughter's allegations regarding plaintiff's level of activity, and found them to be not credible for the same clear and convincing reasons plaintiff's own allegations were refuted (i.e., inconsistent statements, lack of treatment, lack of evidence regarding complaints of side effects of medication). This is not like the case of Robbins v. Social Security Administration, __ F.3d __, 2006 WL 3041106 (9th Cir. Oct. 27, 2006). There, the Ninth Circuit concluded that remand was in order on account of the ALJ's improper rejection of the claimant's testimony and failure to even address the testimony of the claimant's son. As the Robbins court stated: "Because the ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the son's] testimony that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" Robbins, at *4 (quoting Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006)). Here, in contrast, the ALJ did adequately reject plaintiff's subjective complaints and expressly addressed the daughter's statements.

at will and each change would have to be for a period of up to thirty minutes, that she can stand and/or walk no more than two hours per day, and that she can lift no more than ten pounds. Joint Stip. at 17-20. The Court disagrees.

The ALJ expressly found at step two of the sequential analysis that plaintiff's impairments -- disc degeneration of the thoracic spine with kyphosis and degenerative changes from T5 through T11, degenerative change and spurring of the acromioclavicular joint on the right and impingement syndrome of the right shoulder, mild degenerative change of the mid- to lower-cervical spine, diabetes mellitus, and depression -- are severe *in combination*. In fact, as mentioned above, the ALJ stated that "not each of [plaintiff's] impairments is severe if considered separately" but that in combination, they are severe.[13] After considering all of the medical evidence, the ALJ determined at step four that plaintiff is limited to medium work with the further restrictions of being able to frequently, but not constantly, elevate her right shoulder, and occasionally reach overhead with her right upper extremity. [AR at 23.] Because the ALJ found plaintiff's impairments to be severe only "in combination," it follows that in determining the RFC, the ALJ necessarily considered the combined effects of the listed impairments, and did not conduct a fragmentized analysis of the separate impairments and their respective limitations.

As for plaintiff's contention that the ALJ failed to consider the specific restrictions that she can stand and/or walk for a maximum of two hours, lift no more than ten pounds, and needs to change positions at will for up to thirty minutes at a time, the Court notes that these particular limitations come from the Medical Source Statement prepared by Dr. Rivera on September 1, 2004, which was not before the ALJ when he issued the hearing decision. As explained supra, the Appeals Council rejected this assessment for legally sufficient reasons. Accordingly, remand is not warranted for the ALJ to reconsider the RFC in light of these particular restrictions set forth by Dr. Rivera.

---

[13] The ALJ also addressed the evidence concerning plaintiff's allegations of pain in her ribs, foot, wrist, lumbar spine and other joints, headaches, and epigastric problems, and concluded that none of these impairments are severe. [AR at 18-19.]

The hypotheticals posed to the VE properly included the restrictions that are supported by the record. In the first hypothetical, the ALJ asked the VE to assume the individual was restricted as follows: can perform medium level work; can stand, walk and sit in any combination for six out of eight hours; and can frequently but not constantly elevate the right shoulder. [AR at 279.] According to the opinion of the testifying medical expert, these particular restrictions are appropriate given the record of evidence. [See AR at 269.] See Magallanes, 881 F.2d at 752-53 (ALJ may rely on opinion of medical expert when the expert's findings are supported by the evidence). The consultative examiner, after evaluating plaintiff and conducting independent clinical tests, also opined that plaintiff can perform medium work and can sit, stand, and walk for these amounts of time. [AR at 195.] See Magallanes, 881 F.2d at 751-52 (non-treating physician's opinion serves as substantial evidence when it is based on objective clinical tests). In the second hypothetical, the ALJ modified the restriction so that the individual would only be able to occasionally use the right shoulder for overhead reaching. [AR at 269.] This limitation is also set forth by the consultative examiner in his evaluation. [AR at 195.]

In the third hypothetical, the ALJ added the restriction of not being able to use ladders, ropes, and scaffolds, which is set forth in the physical residual functional capacity assessment prepared by the State Agency nonexamining physician. [AR at 213, 279.] Finally, in the last hypothetical posed, the VE was to assume that the individual was limited to simple and repetitive tasks on account of a mental impairment, and/or side effects of medication, and/or pain or other subjective symptoms. [AR at 279-80.] This mental limitation not only encompasses the consultative psychologist's finding that plaintiff is capable of performing simple work, but also takes into account to a limited extent plaintiff's allegations of pain. More severe restrictions on account of plaintiff's subjective complaints were not required, as the ALJ made specific findings in support of the unfavorable credibility determination. See supra. In response to each hypothetical described above, the VE testified that the individual would be able to perform plaintiff's past work as an assembly press operator and punch press operator. [AR at 279-80.]

Plaintiff has failed to show that, based on the combined effect of her impairments, additional restrictions are appropriate. Accordingly, the Court finds that the ALJ properly determined

plaintiff's limitations by considering the combined effects of her various ailments when determining her RFC.  Remand is not warranted.

## VI.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 1, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE